IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00313-CR

No. 10-06-00314-CR

 

Michael Larkin,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 52nd District Court

Coryell County, Texas

Trial Court Nos. FISC-05-17710
and FO-06-18232

 



MEMORANDUM  Opinion










 

        Larkin appeals his convictions
for aggravated sexual assault, and criminal attempt to commit aggravated
kidnapping, of a child, Anna James, a pseudonym.  See Tex. Penal Code Ann. §§ 15.01,
20.04 (Vernon 2003), § 22.021 (Vernon Supp. 2007); Tex. Code Crim. Proc. Ann. art. 57.01(2) (Vernon 2006), art.
57.02(b)-(h) (Vernon Supp. 2007).  The jury found that Larkin “cause[d] the
penetration of the anus of Anna James[,] . . . a child who was
. . . younger than 14 years of age . . . , by
[Larkin]’s finger,” and ”with the specific intent to commit the offense of
Aggravated Kidnapping of Anna James . . . , and with the
intent to violate or abuse sexually Anna James . . . [,] put his
arm around Anna James’ neck, tried to cover her mouth, and told her she was
coming with him.”  (1 C.R. (No. 10-06-00313-CR) at 1; 1 C.R. (No.
10-06-00314-CR) at 1; see 14 R.R. at 29, 31); Tex. Penal Code Ann. §§ 15.01(a), 20.04(a)(4),
22.021(a)(1)(B)(i), (2)(B).  We affirm.

        Argument.  In
Larkin’s first two issues, he complains of the State’s jury argument.

Permissible jury argument falls into one of four
areas: (1) summation of the evidence; (2) reasonable deduction from
the evidence; (3) an answer to the argument of opposing counsel; or
(4) a plea for law enforcement.

Gallo v. State, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007) (citing
Cannady v. State, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000)); accord
Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).    

        Guilt-Innocence. 
In Larkin’s first issue, he asks: 

Was the State’s Guilt/Innocence jury argument . . . outside of
and unsupported by the Record and so calculated to inflame the prejudice of
jurors as to be incapable of eradication from jurors’ minds by even a proper
instruction; and, if curable, were the instructions given inadequate,
so as to render the denial of a mistrial reversible error?”  

(Br. at 7 (emphasis in orig.).)  

        When the trial court sustains
an objection to jury argument, instructs the jury to disregard the argument,
and denies a motion for mistrial, the only error, if any, can be in the denial
of the motion for mistrial.  See Cruz v. State, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007); Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). 
“[A]n instruction to disregard the argument generally cures the error.”  Dinkins
v. State, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995); see Wesbrook v.
State, 29 S.W.3d 103, 115-16 (Tex. Crim. App. 2000); Pierce v. State, 234
S.W.3d 265, 268 (Tex. App.—Waco 2007, pet. ref’d); cf. Russeau v. State, 171
S.W.3d 871, 885 (Tex. Crim. App. 2005), cert. denied, 126 S. Ct. 2982 (2006); Hawkins at 78-82.

        “A mistrial is the trial
court’s remedy for improper conduct that is ‘so prejudicial that expenditure of
further time and expense would be wasteful and futile.’”  Hawkins, 135
S.W.3d at 77 (quoting Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App.
1999)).  “Only in extreme circumstances, where the prejudice is incurable, will
a mistrial be required.”  Id. (citing Simpson v. State, 119
S.W.3d 262, 272 (Tex. Crim. App. 2003)); see McGinn v. State, 961 S.W.2d
161, 165 (Tex. Crim. App. 1998).  

        “We review a trial court’s
denial of motions for mistrial . . . under an abuse of discretion
standard.”  Gallo, 239 S.W.3d at 775 (citing Simpson, 119 S.W.3d
at 272; Heiselbetz v. State, 906 S.W.2d 500, 511 (Tex. Crim. App.
1995)); see Penn v. State, 36 Tex. Crim. 140, 143, 35 S.W. 973, 974
(1896).  Under that standard, “as long as the trial court’s decision was within
the zone of reasonable disagreement and was correct under any theory of law
applicable to the case, it must be upheld.”  Winegarner v. State, 235
S.W.3d 787, 790 (Tex. Crim. App. 2007) (citing Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g)).

        “[T]he Mosley [v. Texas] factors should be used to evaluate whether the trial court abused its discretion
in denying a mistrial for improper argument . . . .”  Hawkins,
135 S.W.3d at 77; see Mosley v. State, 983 S.W.2d 249 (Tex.
Crim. App. 1998).  We balance: “(1) severity of the misconduct (the
magnitude of the prejudicial effect of the prosecutor’s remarks),
(2) measures adopted to cure the misconduct (the efficacy of any
cautionary instructions by the judge), and (3) the certainty of conviction
absent the misconduct (the strength of the evidence supporting the
conviction).”  Ramon v. State, 159 S.W.3d 927, 929 (Tex. Crim. App.
2004) (quoting Mosley at 259).  

        Larkin complains of the
following argument in the guilt-or-innocence phase of trial:

What did he plan to do that day?  [Emphasis is Appellant’s]  Planned to
grab a child out of the bathroom, run into his car[,] go out to Fort Hood[] and
we would probably have a murder and a dead child out there that would be
discovered, bones discovered out on Fort Hood somewhere.

(Br. at 11 (emphasis added by Larkin)
(first bracketed addition by Larkin) (other bracketed corrections added).)

        After that jury argument, the
following colloquy took place between the trial court and Larkin’s counsel,
Montgomery:

       MR. MONTGOMERY: Your Honor, I
am going to have to object to that comment, that’s not supported by the
evidence.

       THE COURT:  All right.  Counsel
will restrain his argument to matters in evidence.  The jury will consider the
evidence as they recall it in the case and only the evidence as they recall it
in the case.

       MR. MONTGOMERY:  And I further
request a mistrial.  There’s no curative instruction that can support the
argument that a murder would have occurred.  There’s nothing in the record to
support that.  That is grossly unconscionable activity or conduct on the part
of this district attorney.

       THE COURT:  All right.  That motion is
denied.  The jury will disregard any comment concerning any matter that is not
shown by the evidence in this case, including the last argument made by the
district attorney.

(14 R.R. at 25-26.)

        First, as to the severity of
misconduct, we assume without deciding, as Larkin argues, that the argument was
extremely prejudicial.  Second, as to the measures adopted to cure the
argument, Larkin did not request an instruction; he contended that the argument
was incurable.  The trial court, nonetheless, sua sponte repeatedly and
effectively instructed the jury to disregard, both as to matters not in
evidence generally and specifically as to the State’s argument.  Third, the
certainty of conviction without the State’s argument was strong.  Anna, nine
years of age at the time of trial, testified clearly and directly.  For
example, she testified of Larkin: 

he had a camera phone and he went to the stall
right next to me and took a camera phone . . . , took
pictures of me using the bathroom, and then he went under the stall where I was
and strangled me, then he put his hand on my butt where I use the bathroom.

(12 R.R. at 48.)  Anna also testified,
“after I was getting ready to wipe myself, he came under the stall and he did
that to my butt,” that is, “had his hand in my butt.”  (Id. at 59, 60.)  Anna’s
outcry witness corroborated Anna’s testimony; several witnesses identified
Larkin as the stranger at Anna’s elementary school and testified to Anna’s screams;
and Anna’s video-recorded statement and Larkin’s written and recorded oral
confessions were in evidence.  For example, Larkin confessed: 

I enterd [sic] the
girls bathroom and tried too [sic] assault
a girl[.]  In doing so I put my hands on her bottom area and over her mout [sic]
telling her too [sic] be quiet.  She screemed [sic] and I left the school[.]  On the day prior I
was at the school but couldt [sic] bring
myself to do such an act.     

(State Ex. No. 6.)  Larkin also
confessed: 

On March 9th, 2005 I was [sic] Halstead
Elementary and I followed a girl into the bathroom.  I went into the stall
behind her, attempted to assault her[.  I]n doing so I tried to cover her mouth
and placed my hands on her bottom.  I told her she was going to come with me
and she was screaming and crying.

(State Ex. No. 7, at [1]-[2].)

        Even assuming misconduct, the
second and third factors would outweigh the first.  The trial court did not
abuse its discretion in denying Larkin’s motion for mistrial.

        We overrule Larkin’s first
issue.

        Punishment.  In
Larkin’s second issue, he asks, “Was the State’s Punishment
jury argument . . . inflammatory and invitive of juror speculation as
to matters outside of the Record, and not cured by the instruction given; and,
if not in and of itself independently reversible, nevertheless reversible
error in light of the cumulative
prejudicial effect?”  (Br. at 7 (emphasis in orig.).)  

        Texas
Rule of Appellate Procedure 33.1 provides:

       As a prerequisite to presenting
a complaint for appellate review, the record must show that:

       (1)   the complaint was made to
the trial court by a timely request, objection, or motion
. . . ; and

       (2)   the trial court:

       (A)  ruled on the request,
objection, or motion, either expressly or implicitly; or

       (B)   refused to rule on the request,
objection, or motion, and the complaining party objected to the refusal.

Tex. R. App.
P. 33.1(a).  “Except for complaints
involving systemic (or absolute) requirements, or rights that are waivable
only[,] . . . all other complaints, whether constitutional,
statutory, or otherwise, are forfeited by failure to comply with Rule
33.1(a).”  Neal v. State, 150 S.W.3d 169, 175 (Tex. Crim. App. 2004)
(quoting Mendez v. State, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004))
(ellipsis in Mendez); accord King v. State, 953 S.W.2d 266, 268
(Tex. Crim. App. 1997); see Marin v. State, 851 S.W.2d 275, 278-80 (Tex.
Crim. App. 1993).

        Rule 33.1 applies to objections to jury argument. 
See Threadgill v. State, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004); Cockrell
v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).

        “We review the trial court’s
rulings on objections to argument for abuse of discretion.”  James v. State,
No. 10-05-00376-CR, 2007 Tex. App. LEXIS 298, at *4 (Tex. App.—Waco Jan. 17, 2007, no pet.) (not designated for publication) (mem. op.) (quoting Pippillion
v. State, No. 10-04-00264-CR, 2006 Tex. App. LEXIS 3347, at *2 (Tex.
App.—Waco Apr. 26, 2006, no pet.) (not designated for publication) (mem. op.));
see Herrin v. State, 125 S.W.3d 436, 445 (Tex. Crim. App. 2002); Robinson
v. State, 415 S.W.2d 180, 182-83 (Tex. Crim. App. 1967); Montgomery v.
State, 198 S.W.3d 67, 95 (Tex. App.—Fort Worth 2006, pet. ref’d). 

        Larkin
complains of the following arguments in the punishment phase of trial:

Vol 15 Pg
106:   “You have heard the defendant’s statement.  What does he like?  Little
girls.”

Vol 15 Pg 108:   “That behavior
doesn’t stop.  It won’t stop here.”

(Br. at 20 (emphasis added by
Larkin).)

        1.     As to the first
argument of the district attorney of which Larkin complains, Larkin objected,
and the trial court instructed the jury, as follows:

       MR. MONTGOMERY:  Your Honor,
I’m going to have to protest.  Perhaps Mr. Castillo is in good faith here, but
the quote that he likes little girls is a gross distortion of the record.  It’s
taken from a portion of the confession where he responds to—if I remember, as
regards to whether or not he likes younger girls.  We’re not talking about
little girls.

       THE COURT:  Counsel, the jury will recall
the evidence in this case.

(15 R.R. at 106.)

        We assume without deciding
that Larkin preserves for appellate review a complaint of argument outside the
record or not constituting a reasonable deduction from the evidence.

        In Larkin’s written statement,
he stated that he “personnaly [sic] prefer[red] young girls.”  (State Ex. No.
7, at [3].)  Larkin went on to state why he “cho[]se young girls this time,”
that is, the seven-year-old Anna at the time of the charged offenses.  (Id.)  Larkin also stated that “touching little girls on their buttocks
. . . made[ him] feel good.”  (Id. at [9].)  Larkin
assaulted Anna in, and attempted to abduct her from, her elementary school. 
Larkin stated that he went to the school for “[t]he smaller kids to take
advantage of maybe.”  (Id. at [3].)  Larkin’s statement to which the
State refers clearly concerns children of the age of the victim.  The State’s
jury argument constituted summation of the evidence or reasonable deduction
from that evidence.  Assuming without deciding that the trial court ruled on a
preserved objection, the trial court would not have abused its discretion in
overruling an objection to argument outside the record.  

        2.     As to the second
argument, Larkin did not object.  Larkin fails to preserve a complaint for
appellate review.

        Conclusion.  Larkin forfeits, or the trial court would not
have erred in overruling, Larkin’s objections to punishment argument.  

        We consider Larkin’s
cumulative-error argument below.

        Offer of Evidence.  In
Larkin’s third issue, he asks, “Did offers of proof made before the jury and
then withdrawn evince bad faith so as to
constitute prosecutorial misconduct; and,
regardless of the impact of such tactics when considered by themselves,
likewise reflect such cumulative
prejudice so as to require reversal?”  (Br. at 7 (emphasis in orig.).)  

        An appellant’s “point of error
on appeal must comport with the objection made at trial.”  Wilson v. State, 71
S.W.3d 346, 349 (Tex. Crim. App. 2002) (citing Thomas v. State, 723
S.W.2d 696, 700 (Tex. Crim. App. 1986)); see Tex. R. App. P. 33.1(a); Smith v. State, 513 S.W.2d
823, 830 (Tex. Crim. App. 1974).  “[A]n objection stating one legal theory may
not be used to support a different legal theory on appeal.”  Dixon v. State,
2 S.W.3d 263, 273 (Tex. Crim. App. 1999) (op. on reh’g) (citing Broxton
v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995)).  When an
“[a]ppellant’s trial objection does not comport with the issue raised on
appeal,” then “he has failed to preserve his complaint for . . .
review.”  Swain v. State, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005), cert.
denied, 127 S. Ct. 145
(2006); see Gallo, 239 S.W.3d at 768; Medina v. State, 7 S.W.3d
633, 639 (Tex. Crim. App. 1999).

        Larkin summarizes his argument
on appeal as follows:

       The most blatant example of said bad
faith/subsequently withdrawn offers of proof was when the prosecutor inferred
to the jury, in cross-examining Appellant’s sole witness, his mother, that he
had caught her in a lie; the insinuation was that a tape that he was going to
play for the jury would reveal her (on the phone, long distance) telling
State’s witness Investigator Lori Hix that Appellant was seventeen (rather than
fifteen as she’d recalled it before the jury) when a visiting ten year old girl
told her mother that Appellant had touched her bottom.  The tape was played—out
of the jury’s presence and hearing—for the benefit of Appellant and counsel;
and when it became clear that all that the phone conversation recorded was a
horrified mother responding in shocked silence, occasionally muttering
“uh’m” in response to the caller who said she was investigating the
mother’s son for some sex crime and understood that he’d done something like
that when he was “around seventeen?”, when all this became clear Appellant’s
counsel had the tape stopped and inquired, unsuccessfully, whether the
prosecutor had anything on the tape that would have supported his bad faith
assertion—whereupon, the prosecutor at this point withdrew the offer,
the jury never heard any explanation for the tape that had been alluded to not
being played for them, and defense counsel was again declared to be in
contempt of court, this time for calling the prosecutor—out of the presence of
the jury—a “false accuser”.  (RR Vol 15 Pg 85 Ln22 thru 15-94)

(Br. at 21-22 (emphasis in orig.).)  

        We understand Larkin’s
complaint to concern the following cross-examination of Larkin’s mother by the
State, during the punishment phase of trial, on Shirley Larkin’s statement to a
police detective:

       Q    . . . . 
Did you talk to Lori Hix on March 11th, 2005?

       A     I spoke with her, I do
not recall the date.

       Q    And did you tell her that
[Larkin] had told you about having urges to touch girls’ butts?

       A     No, sir.

       Q    You did not tell her that?

       A     No, sir.

       Q    Did you not tell her that
he got in trouble for touching a girl’s bottom when he was 17, a ten-year-old
girl?

       A     No, sir.

(15 R.R. at 85.)  

        In beginning his rebuttal
case, the district attorney stated: “Your Honor, we would like to call one more
witness.  We’d like to recall Lori Hix, and we’re going to need a minute to get
a CD player set up.”  (15 R.R. at 87.)

        Assuming without deciding
that, that statement constituted an offer of evidence, Larkin’s only objections
to the offer are as follows, outside the presence of the jury:

       MR. MONTGOMERY:  I strenuously
object, another bad—

       MR. CASTILLO:  Your Honor, I
object.

       MR. MONTGOMERY:  —then he sets
him up with something we were not given a copy of after I’ve been under the
impression for five months that I had complete open file discovery.

       . . . .

       THE COURT:  All right.  I’ll
tell you what—

       MR. MONTGOMERY:  He did not
tell her 15, and if she misquoted you for 17, would that have been wrong? 
That’s in the record.  They can bring in Lori Hix.  My objection is to their
lack of notice of the existence—we’re not talking about lack of notice of
intent to put it into evidence.  They told me they had given me copies of
everything they had in their possession.  They lied to me.

       THE COURT:  All right. 
Counsel, what I’m going to do on this is this, I’m going to allow them to play
the audiotape.  Your client is here in the courtroom.  And if your client wants
to listen to the audiotape and then you want to put her back on or they want to
call her, which they can, and ask her questions about the audio recording, I’ll
allow them to do that or ask her if that’s what she said.

       Then the direct evidence of
what she said does not come into testimony.  It’s not in—but they can ask her
by showing her her previous response, and in this case a recorded response, what
she said and if she admits that, then that is not an issue that comes before
the jury.

       So if you want to handle it in
that way but other than that, they’re entitled to impeach a witness whose
testimony they don’t have and they’re entitled to impeach it with prior
statements she’s made which you were aware of.

       MR. MONTGOMERY:  Judge, I
respectfully disagree.  How many times in law school did we hear professors
telling us that we couldn’t set up a straw man and knock him down?  I’ve never
seen—

       THE COURT:  Counsel, they
didn’t—

       MR. MONTGOMERY:  —incident,
they had an audiotape which they didn’t tell me about.  They gave me no
notice.  They set up a straw man and knocked him down, and this tape is not
admissible under any circumstances.

       THE COURT:  Counsel, I’m going
to handle it the way that I just told you.  I do not believe that on matters of
rebuttal or impeachment, particularly when it’s not a tape of your client—they
have a right to impeach the witness by asking her questions.  The proper way to
do that is let her listen to the material.  She can then either admit that
material or deny that material.  If she denies it, they get to play it.  If she
admits it before the jury, they don’t get to play it.

       MR. MONTGOMERY:  I’m not
contesting that, Judge.  They’ve got the right to put Lori Hix on the stand and
impeach her.  Let the jury compare Lori’s testimony against hers.  They’re the
judge of the credibility of the witnesses.

       They can’t tell me, “we’ve
given you everything.  Everything we’ve got is on this table,” and then come in
after six months and say, “Oh, yeah, we got something else we didn’t tell you
about.”

       THE COURT:  Counsel, I told you
how I’m going to rule on it.  That’s my ruling.  They can play the tape at this
time, your client’s mother can listen to it.  If she says, “yes, apparently
that’s what I said,” then they can ask her in front of the jury and that will
be the end of it.  If she does not, then they can ask Lori Hix and they can go
into the recording.  That’s the ruling of the court.  Play the tape right now
so you can listen to the tape or CD.

       MR. CASTILLO:  Judge, we’ll
just have Lori Hix on and have her testify.

       THE COURT:  All right.  Good
enough.  Bring the jury back and have Lori Hix come in.

       MR. MONTGOMERY:  That’s not acceptable
to me.  I’m tired of this game playing.  That is not acceptable.  I want to
hear the tape now because he’s not going to continue playing this game.  

       THE COURT:  All right.  Do you
want to hear it and then admit it into evidence?  You want to admit it into
evidence, counsel?

       MR. MONTGOMERY:  No, sir, I
don’t.  I want you to do exactly what you said you were going to do before he
tried to change the rules.

       THE COURT:  You can play it
then.  Hook it up and play it, counsel.

       MR. MONTGOMERY:  I don’t know
how to hook anything up.  I’m a horse and buggy lawyer.

       (Tape played
. . . .)

       MR. MONTGOMERY:  All right.  I
want it off, cut it off.  I object to any further play.  Put it on the record I
object to any further play.

       THE COURT:  Okay.  Turn it
off.  Just put it on pause.

       MR. MONTGOMERY:  Apparently all
they’ve got to try and call her a liar is that Lori Hix began the conversation
with sometime when he was about 17 or 18—

       THE COURT:  Counsel, since you
haven’t listened to the entire CD, I don’t know that you can say that.

       MR. MONTGOMERY:  I’m asking
that—

       THE COURT:  However, you have
asked that it be played, now you’ve asked—

       MR. MONTGOMERY:  I don’t want
the entire thing played.  I put it on the record that I wanted the parts played
that was relevant to their insinuation that she lied—

       THE COURT:  All right. 
Counsel, Counsel, just a second.  You haven’t heard the whole thing so you
don’t know what’s on the rest of the CD.

       MR. MONTGOMERY:  I know that
it’s—I’m asking you—them, Judge, and I’m telling you I don’t have to justify
myself to your—

       THE COURT:  You do—

       MR. MONTGOMERY:  I object to
the playing of the rest of the tape and I’m inquiring of this false accuser—

       THE COURT:  Counsel, you’re in
contempt of Court again, $500.

       MR. MONTGOMERY:  All right.

       THE COURT:  You understand
that?  You’re attacking counsel improperly.  You’re fined $500.  It will be
brought up at a proper time.

       Do you want the tape played to
the jury?

       MR. MONTGOMERY:  No, sir, I
don’t want it played to the jury.  I want to know—

       THE COURT:  Is the State
content to have Lori Hix come back in?

       MR. CASTILLO:  I don’t even
want to bring Lori Hix back in.  We’re done.

       MR. MONTGOMERY:  Is Your Honor
going to put on the record—what I want to know, I want to know where in this
tape, if anywhere in this tape, he’s got any further ammunition for accusing
her falsely of lying, other than the fact that Lori Hix began the phone call
after introducing herself totally cold and sometime when he’s 17 or 18 or—

       THE COURT:  Counsel, Counsel,
this hearing on this particular issue is closed at this time.  State is
withdrawing the witness, is not going to offer the witness.

       MR. MONTGOMERY:  Yes, sir.

       THE COURT:  There will be no
rebuttal testimony.

       MR. CASTILLO:  That’s correct.

       THE COURT:  Stands where it is.

       MR. MONTGOMERY:  I want you—

       THE COURT:  Stands where it is.

       MR. MONTGOMERY:  I want you to
know, Your Honor, there will be a complaint to the judicial qualifications
commission for what you just did.

       THE COURT:  What is that,
counsel?

       MR. MONTGOMERY:  Fining me in
contempt of court for trying to get the Court to deal with the fact that he
keeps making false accusations, and I was trying to get—get you—

       THE COURT:  Counsel, counse
[sic], I have the right to control my courtroom and to control—

       MR. MONTGOMERY:  —you do, sir—

       THE COURT:  —behavior of
attorneys.  You will not attack another attorney.

       MR. MONTGOMERY:  I wasn’t
attacking.

       THE COURT:  You were, counsel.

       MR. MONTGOMERY:  Okay.

       THE COURT:  I told you not to
call him names.

       MR. MONTGOMERY:  —judicial
qualifications and grievance—

       THE COURT:  Let me bring this
to your attention.  You may refer to him as counsel, you may refer to him as
Mr. Castillo.  You will not refer to him otherwise.

       MR. MONTGOMERY:  I can’t call
him a false accuser when he keeps falsely accusing people?  This is a would-be
murderer and this is a liar (Indicating).

       THE COURT:  Counsel, counsel,
you can make the argument of your case on the evidence.  I’m not prohibiting
that.  I’m controlling the conduct in the courtroom with the way you relate
with other counsel.  I’m correct in doing that.  You do what you want to.

       MR. MONTGOMERY:  I will, sir.

(15 R.R. at 87-95); see Tex. Code Crim. Proc. Ann. art. 37.07,
§ 3(g) (Vernon 2006); Tex. R. Evid.
404(b), 607, 613(a).  After the jury returned, the following colloquy took
place:

       (In the presence of the jury.)

       MR. MONTGOMERY:  Your Honor, I
need to approach.

       THE COURT:  Counsel.

       (Bench conference outside the
hearing of jury.)

       MR. MONTGOMERY:  I need to know
is it on the record that he just withdrew that offer?  If it wasn’t, there’s
certainly going to be a bill of exception.

       THE COURT:  Counsel, if you
want it on and want if played, offer it.  If you don’t, don’t.

       MR. MONTGOMERY:  No, no, no,
sir.  That’s not the issue.  I’ve been fined $500.

       THE COURT:  Counsel, counsel—

       Ladies and gentlemen, I’m
sorry.  We’re going to have to excuse you to the jury room again.

       (Following had outside the
presence of jury.)

       THE COURT:  The record will
reflect this is outside the presence of the jury, as was the other conversation
with counsel in which he was fined.  Go ahead, Counsel.

       MR. MONTGOMERY:  All right. 
I’m inquiring if the court reporter—because while I was being attacked by the
Court, I wasn’t watching what the court reporter was doing.  Did the court
reporter get all of that about me trying to get the DA to tell us if there was
any other place on this tape where they had any discussion of what age the
defendant was when this incident of touching the ten-year-old occurred?

       And I’ll—before I ask the court
reporter to respond, I’ll finish up on my question.  After the conclusion of
this soliloquy and I had been fined the second time, this time $500 for
contempt of court, this district attorney withdrew his offer of either the tape
or Lori Hix’s testimony.  Is that on the record?

       COURT REPORTER:  Yes, sir.

       MR. MONTGOMERY:  And is it on
the record that I told this judge, and I now affirm, I’m taking him before the
judicial qualifications commission?

       COURT REPORTER:  To the best of
my ability because everybody was talking at the same time.

       MR. MONTGOMERY:  All right. 
Well, it’s on the record now, isn’t it?

       COURT REPORTER:  Yes, sir.

       THE COURT:  All right.  Mr.
Montgomery, we’re not through yet.  I’m asking a question.  Your client—your
client’s mother has testified.  You rested.  State indicated they had a
rebuttal witness, and they were going to use the audio CD as a part of that
testimony, provided that to be played for your benefit outside the presence of
the jury.  You requested that it be stopped after it had been started and
played only a few minutes.

       MR. MONTGOMERY:  After it had—

       THE COURT:  Counsel, just a
second.  After it had been played only a few minutes, you then ordered it be
stopped.  It was stopped.  Now, the State has indicated that they’re not going
to offer the rebuttal testimony.  Do you want the rebuttal testimony?  Is that
what you’re saying?

       MR. MONTGOMERY:  No, sir, I
want a fair record.  Will the Court let me say something?

       THE COURT:  What is your
complaint?

       MR. MONTGOMERY:  I want to put
in the record right now that my client’s mother didn’t know who Lori Hix was
when Lori Hix called.  She has—she called my client’s mother cold to talk to
her about a serious accusation as this—

       THE COURT:  Counsel, Counsel—

       MR. MONTGOMERY:  Can I finish?

       THE COURT:  No, if you want to
put testimony—

       MR. MONTGOMERY:  I’m not
putting testimony—

       THE COURT:  Counsel—

       MR. MONTGOMERY:  —17 or 18—

       THE COURT:  Counsel, be quiet. 
If you want you client’s mother to testify about something, I’ll give you an
opportunity to do so after this hearing.  Do you understand that?

       MR. MONTGOMERY:  I want to put
it on—

       THE COURT:  But what you
testify is not what she testified.

       MR. MONTGOMERY:  I want to put
it on the record, sir, that—in this tape, she began the conversation with, “Is
it true that when he was about 18 or 17 he touched a little girl’s”—

       THE COURT:  Fine.  I’ll let you
make a bill—

       MR. MONTGOMERY:  There is
nothing else—

       THE COURT:  I’ll let you make a
bill at a later time, counsel.  If you want to make a bill of some sort, you
may do so at a later time.  You may call your client’s mother at a later time
if you want her to testify.

       MR. MONTGOMERY:  I’ll file a
formal bill of exception.

       THE COURT:  At this time I’m
going to bring the jury back.  Do you have anything further before we bring the
jury back?

       MR. MONTGOMERY:  No.

(15 R.R. at 96-99.)

        Immediately thereafter, the
parties close.  Larkin does not otherwise object to the district attorney’s
withdrawal of his intent to offer rebuttal evidence.  Larkin does not attempt
to explain the withdrawal to the jury, or object to the trial court’s not doing
so.

        Larkin’s argument on appeal
does not comport with any trial objection.[1]  Larkin does not preserve for appellate review a
complaint concerning the State’s offer of evidence.  

        We consider Larkin’s
cumulative-error argument below.

        Voir Dire.  In
Larkin’s fourth issue, he asks, “Was Appellant denied
the right to pose proper voir dire commitment questions, whether
because same bore on challenge for cause or would have aided
peremptory challenges; and, again, does the cumulative prejudice of denial require reversal?”  (Br. at 7
(emphasis in orig.).)  We understand Larkin’s fourth issue to pertain to the
conviction for attempted aggravated kidnapping.

        “To preserve
error . . . , a defendant must pursue to an adverse ruling
his objections . . . .”  Archie v. State, 221 S.W.3d
695, 699 (Tex. Crim. App. 2007); accord Washington v. State, 771 S.W.2d
537, 543 (Tex. Crim. App. 1989); Burks v. State, 432 S.W.2d 925, 926
(Tex. Crim. App. 1968); Clayton v. State, No. 10-06-00254-CR, 2007 Tex.
App. LEXIS 7910, at *5 (Tex. App.—Waco Oct. 3, 2007, pet. ref’d) (not
designated for publication) (mem. op.); Pace v. State, No.
01-04-00518-CR, 2007 Tex. App. LEXIS 8143, at *5 (Tex. App.—Houston [1st Dist.]
Oct. 11, 2007, no pet.) (not designated for publication) (mem. op.); see
Tex. R. App. P. 33.1(a).




        We assume without deciding
that Larkin’s complaint is adequately briefed.[2]

        “Commitment questions are those that commit a
prospective juror to resolve, or to refrain from resolving, an issue a certain
way after learning a particular fact.”  Wingo v. State, 189 S.W.3d 270,
271 (Tex. Crim. App. 2006) (quoting Standefer v. State, 59 S.W.3d 177,
179 (Tex. Crim. App. 2001)). 

        Larkin argues as follows:

       RR Vol 11 (eleven) Pp 75 et
seq. reflects that trial counsel attempted to voir dire the jury on whether
they would hold the State to its burden of proving up the several descriptive
averments of the indictment for Attempted Aggravated Kidnapping.  Objection by
the State was sustained on the ground that counsel was going into “the facts of
the case; it mattered not to the court that they were factual allegations
of the charging instrument (Vol 11 Pg 76 Lines 22-24); nor, apparently,
was the trial judge cognizant of the significance of the lack of any
amendment/partial abandonment of the indictment’s allegations—hence lack of
ability to treat these averments as surplusage that could be discarded; the
State went to trial on the indictment with its descriptive averments intact! 
Subsequently, as expected, the State came up somewhat short on proof of
the averment that Appellant had told the little girl that “You’re coming with
me”; in spite of the prosecutor asking several times what the man had said, the
little girl basically testified to only “Shuh”!  V12 P59 Lines 5-7 et seq.
& V12 P 74 Lines 11-25  Were it not for the testimony (Vol 12 Pg 191 Lines
3-4) of Investigator Strunk that Appellant told him that he, Appellant,
had indeed told the little girl “You’re coming with me”, were it not for this
perfect recounting there would have been a fatal VARIANCE between the pleadings
and the proof!

       But while officer Strunk’s perfect memory
saves the State from a sufficiency issue on appeal, it is nevertheless obvious
that the jury would have had a much tougher time—from the standpoint of
weighing the conflicting testimony*—with this deficiency if
the trial court had allowed the attempted, quite proper commitment voir dire. 
EWING V. STATE (Tex. App.—Ft. W. ’05) 157 S.W.3d 863, LYDIA V. STATE (CCA
’03) 109 S.W.3d 495, and STANDEFER V. STATE (CCA ’01) 59 S.W.3d 177
together reveal that a commitment question is improper if
(1) the law does not require a commitment, or (2) the question adds
facts beyond those necessary to establish a challenge for cause.  Under this
test, counsel should have been able to seek a commitment from the jurors
that a failure to produce evidence that the little girl was told (by her
alleged would-be abductor) “You’re coming with me” WOULD NOT BE TREATED
AS A MERE “TECHNICALITY”!

(Br. at 24-25 (internal note omitted)
(emphasis in orig.) (some internal citations omitted)); see Lydia v. State, 109 S.W.3d 495 (Tex. Crim. App. 2003); Standefer, 59 S.W.3d 177;
Ewing v. State, 157 S.W.3d 863 (Tex. App.—Fort Worth 2005, no pet.).

        We understand Larkin to
complain of the following colloquy among Montgomery, the district attorney, and
the trial court:

       MR. MONTGOMERY:  Another
question.  Mr. Bynum, the other indictment is for attempted aggravated sexual
assault.  Now, the indictment alleges—you see, to have an attempt to
commit—excuse me.  I’m sorry.  I miss many—we’re talking about the indictment
for attempted aggravated kidnapping.  All right.

       Now, to have an attempted
aggravated kidnapping it’s got to of course be an attempted kidnapping and then
the kidnapping has to be for a specific purpose.  If they can establish that
there was an attempt to commit a kidnapping here.  I’ll grant you, from the
circumstances that necessarily follows that the intent was to sexually abuse
the victim, if they can establish that there was attempt to commit that
kidnapping.  All right?

       So if there’s an attempted
kidnapping, it’s necessarily attempted aggravated kidnapping.  But to have an
attempt to commit a kidnapping to begin with before it can even become
aggravated, they’ve got to have what?  An act which amounts to more than mere
preparation that tends but fails to effect the commission of the offense.

       In other words, he tried to. 
Mere preparation is not enough.  If you sat around at the house and thought,
“Well, I’m going to go down to the little girls’ bathroom at Halstead
Elementary—

       MR. CASTILLO:  Objection,
Judge—

       MR. MONTGOMERY:  Well, Judge,
I’m not getting into the facts, I’m—general—

       THE COURT:  Counsel, offer
examples, but you cannot get into any facts that you feel like may be offered
in this case.

       MR. MONTGOMERY:  Not at all,
Your Honor, that’s totally—if he sits around and thinks about it and plans it,
but doesn’t do anything by way of trying it, you see, he hadn’t made an
attempt.  Now, to have an attempt he has to do some act which tends to carry
him towards commission of the offense.

       What have they alleged here? 
Well, they’ve alleged that he put his arm around the little girl and he tried
to cover her mouth and—ma’am, we’re not talking about truth, what happened,
we’re talking about—

       THE COURT:  Counsel, counsel,
come here, both counsel.

       (Bench conference.)

       THE COURT:  Counsel, you’re
going into the facts of this case.  I don’t care if it’s an element of the
indictment in the case.  If they have to prove it, it’s still a fact of this
case.  Don’t go into the facts of this case.  

       MR. MONTGOMERY:  Well, I
object.  And if you’re going to overrule me, I’m going to make a bill of
exception.

       THE COURT:  That’s fine, make
it right now.

       MR. MONTGOMERY:  It is an
element of the offense—

       MR. CASTILLO:  Judge—

       MR. MONTGOMERY:  —allegation—

       COURT REPORTER:  I cannot do
this.

       THE COURT:  Just a second, sir.

       MR. CASTILLO:  I’m afraid the
jury can hear this.  I don’t think they need to be hearing this.

       THE COURT:  Counsel, I’ll let
you make your bill of exception later, but at this time I’m telling you not to
go into the facts of this case or what is alleged in this indictment.  You may
ask about the elements of the offense generally, but not to specifics that are
alleged in this indictment.  You may give examples.  You may not go into the
specifics alleged in this indictment, number one; number two, it’s improper—

       COURT REPORTER:  I can’t hear.

       MR. MONTGOMERY:  —commitment
what they’ve alleged and they’ve got to prove it.

       THE COURT:  I’m ordering you
not to go into the facts of the case.

       (Following had in the hearing
of the panel.)

       MR. MONTGOMERY:  Question is
real simple.  The law requires the State to prove what they’ve alleged.  Will
you convict if there’s any failure to prove what they’ve alleged?  If there’s a
variance between their allegations and their proofs, will you say by your
verdict not guilty?  Mr. Bynum, any problem?

       PANELIST GENE BYNUM:  (Shakes
no.)

       MR. MONTGOMERY:  Thank you, ladies and
gentlemen.

(11 R.R. at 75-78); see Tex. Penal Code Ann. §§ 15.01(a), 20.04(a)(4).

        Outside the presence of the
panel, Larkin further objected as follows:

I think I should have been able to ask
the jury if they would have absolved the State of the obligation to prove that
which they’ve alleged in their indictment, to-wit: that the defendant told the
little girl she was coming with him, or words to that effect.

       . . . .

       It’s just like when I was a
prosecutor and I indicted someone for murder, if I made the mistake of saying,
with a firearm, to-wit: a Colt 45, government issue serial number such and
such, I’ve got to prove it, it’s that simple.

       And my question, ladies and gentlemen,
they’ve alleged that the firearm was a Colt 45, government serial number such
and such.  If there’s one digit off on that serial number in variance of their
proof of their pleadings, will you have any problem acquitting?  I should have
been entitled to put it to them like that, and that’s the very example I would
have given, Your Honor, if you had let me.

(11 R.R. at 79-82.)

        The trial court granted
Larkin’s request and allowed Larkin further voir-dire examination, and Larkin
examined the panel as follows:

       MR. MONTGOMERY: 
. . . .  The judge has offered me the opportunity to clarify my
question.  And it simply is this, in the terms of the cases, the murder cases
that I used to prosecute, if I made the mistake of alleging in a murder
indictment that the firearm that the victim was killed with was a Colt 45
revolver and the proof showed that the Colt 45 was a semiautomatic government
issued pistol, then I have a problem there.  It’s a variance of my proof from
my pleadings.  It’s something that I should have addressed by better
investigation before I drew my indictment.  And I can’t be heard to say as a
prosecutor, well, what difference does it make that the victim was killed with
a semiautomatic rather than a revolver?

       Well, the difference, ladies
and gentlemen, is I’m stuck with proving what I alleged.  That’s the law.  And
my question is, will that bother any of you?

       So again, in that context, is
there anyone here who cannot require the State to prove up every allegation of
their indictment?  You three (Indicating) got picked on.  Y’all were the
favorites.  No problem with requiring the State to prove up every allegation of
this indictment?

       [PANELIST] MR. NEWSOME:  No
problem.

       THE COURT [sic]:  Anyone here differ with
the concept that I posed to you previously?  I don’t care whether you’re a
truck driver, a deputy sheriff, a lawyer, whoever you are, whatever profession
you’re in, there have always been people in that barrel who are willing to bend
the rules.  Anyone disagree with that?

(11 R.R. at 84-86.)

        The trial court permitted
Larkin to ask the panel all the questions Larkin wanted, and Larkin did not
receive an adverse ruling.  Larkin failed to preserve a voir-dire complaint.  

        We consider Larkin’s
cumulative-error argument below.

        Cumulative Error. 
In Larkin’s second, third, and fourth issues, he complains of
“cumulative prejudice” or “prejudicial effect.”  (Br. at 7.)  

        “Multiple errors, determined
harmless when considered separately, may combine to produce an effect that is
harmful, requiring reversal.”  Haskett v. Butts, 83 S.W.3d 213, 221
(Tex. App.—Waco 2002, pet. denied); see Abbott v. State, 196 S.W.3d 334,
349 (Tex. App.—Waco 2006, pet. ref’d) (citing Chamberlain v. State, 998
S.W.2d 230, 238 (Tex. Crim. App. 1999)).  There is, however, “no authority
holding that non-errors may in their cumulative effect cause error.”  Chamberlain,
998 S.W.2d at 238; see Turner v. State, 87 S.W.3d 111, 118 (Tex.
Crim. App. 2002).  “’Cumulative harm’ by definition requires more than one
error.”  Watson v. Michael Haskins Photography, Inc., No.
10-05-00010-CV, 2005 Tex. App. LEXIS 9838, at *9 (Tex. App.—Waco Nov. 23, 2005,
no pet.) (mem. op.)  (quoting Haskett at 221).   

        Having found no preserved error, we find no
cumulative error.  We overrule Larkin’s second, third, and fourth issues.

        CONCLUSION.  Having overruled Larkin’s
issues, we affirm.

TOM GRAY

Chief Justice

Before Chief Justice Gray,

        Justice Vance, and

        Justice Reyna

        (Justice Vance concurs in the judgment)

Affirmed

Opinion delivered and filed May 14, 2008

Do not publish

[CRPM]









                [1] Larkin’s argument is,
moreover, utterly unsupported by the record.





                [2] Rule of Appellate
Procedure 38.1 requires, “The brief must contain . . . appropriate
citations . . . to the record.”  Tex.
R. App. P. 38.1(h).  A brief that fails to comply with Rule 38.1 is
inadequately briefed and presents nothing for review.  See id. 33.1(a); Wyatt
v. State, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000); cf. Gallo, 239
S.W.3d at 768.  

                Larkin argues, “No attempt can be made to provide
exact quotes []from [the record] by reason of the fact that the record
furnished Appellant by his previously court appointed appellate attorney would
be totally undiscernable/unreadable were it not for the memory of Appellant’s
trial counsel.”  (Br. at 24.)  Larkin’s current, retained appellate counsel was
Larkin’s trial counsel.  We understand Larkin’s statement to refer to counsel’s
knowledge of matters outside the record.  We do not understand that to justify
Larkin’s failure to cite to the record.