### W. Richard HASKETT, M.D., Appellant,

### v.

### Pamela BUTTS and Randy Butts, Appellees.

### No. 10-00-397-CV.

Court of Appeals of Texas, Waco.

July 10, 2002.

---

R. Brent Cooper, Diana L. Faust, Michelle Elaine Robberson, Cooper & Scully, P.C., Dallas, for appellant.

Michael Handy, David B. Robinson, Christian Ellis, Cynthia Anne Cook, Handy & Robinson, Fort Worth, for appellees.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

This is a medical negligence case involving a stillbirth. Six days after Pamela Butts's last office visit with her obstetrician, Dr. Richard Haskett, she was admitted to the hospital for delivery. She was past nine months pregnant. Under Haskett's orders, the nurses administered Pitocin to induce labor. About two hours later, Haskett deliberately "broke her water" which he said was routine when, as in Pamela's case, the date of conception is uncertain. At that time, there was no indication of complications.

Several hours later, readings from fetal monitoring equipment, as well as other indicators, were normal. But several hours after that, the baby's heart rate dropped for a few minutes to one-half its normal rate. Haskett examined Pamela and the baby and determined there was no cause for alarm. In a little over an hour, however, the heart rate dropped again. The nurses discontinued the Pitocin, and Haskett began to deliver the baby. The delivery was difficult, and because of complications, Haskett tried to rotate the baby

in the birth canal and used forceps to assist him. When that was unsuccessful, he performed an emergency "C-section." The baby was stillborn.

A year later, Pamela and her husband, Randy, sued Haskett. Their claims included: (a) the wrongful death of the baby; (b) Randy's bystander claim for mental anguish; (c) negligent injury to Pamela; (d) Randy's loss of consortium with Pamela; and (e) funeral and burial expenses for the baby. A partial summary judgment in Haskett's favor regarding the wrongful death claim was eventually rendered because Texas does not recognize that a fetus, not born alive, is a "person" for whom a wrongful death claim may be brought. The court also rejected Randy's derivative bystander claim on that same basis.

At trial, Pamela and Randy presented expert testimony about Haskett's negligence. There was expert testimony that breaking Pamela's water that early was unnecessary and violated a standard of reasonable medical care. There was also expert testimony that if Haskett had not prescribed the amount of Pitocin he did and for as long as he did, there would have been a successful vaginal delivery. Haskett, however, said the cause of death was a strep infection; but Pamela's and Randy's experts, while conceding the baby had a strep infection, attributed death to "acidosis" (too much acid in blood and tissues) and "hypoxia" (insufficient oxygen to tissues) caused by umbilical cord compression and excessive force used with forceps.

A jury found Haskett negligent regarding the "occurrence in question," which was not defined in the charge.[1] The jury awarded: (a) $200,000 to Pamela for past physical pain and mental anguish "for her injuries," and $100,000 for future physical

pain and mental anguish; (b) $5,714.64 in medical expenses for Pamela; (c) $25,000 to Randy for past loss of consortium with Pamela, and $20,000 for future loss of consortium; and (d) $823.74 to Pamela for funeral and burial expenses for the baby.

On appeal, Haskett raises these issues:

1. Whether a mother may recover damages for physical pain and mental anguish, in the absence of any evidence of negligence in the care and treatment of the mother that proximately caused any physical injury independent of the stillbirth, the loss of her fetus. In the absence of independent physical injury to the mother resulting from the negligence in her care and treatment, does the loss of the fetus alone constitute physical injury that will support the recovery of damages.

2. Whether the evidence is legally or factually sufficient to support the jury's finding of negligence of Dr. Haskett in the care and treatment of Pamela Butts.

3. Whether the evidence is legally or factually sufficient to support the jury's award of damages to Pamela Butts.

4. Whether the evidence is legally or factually sufficient to support the jury's award of damages to Randy Butts.

5. Whether the admission of Plaintiffs' Exhibit 24, a photograph of Pamela Butts holding her stillborn infant, is harmful error requiring reversal.

6. Whether Dr. Haskett is entitled to a new trial based on the harmful, cumulative effect of all errors.

---

1. The jury was instructed not to base its decision solely on "evidence of a bad result to the patient."

By cross-appeal, the Buttses challenge the summary judgment regarding the wrongful death claim and Randy's bystander claim, seeking review of Texas Supreme Court precedent. Their cross-issues are "conditional," however; they ask us to consider the cross-issues and reverse the partial summary judgment only if we reverse the final judgment.

### Review of Precedent

■ In 1995, the Texas Supreme Court addressed the interrelated issues of negligence, mental anguish, and the death of an unborn fetus. *Krishnan v. Sepulveda*, 916 S.W.2d 478 (Tex.1995). The Court reaffirmed its earlier decisions that, in Texas, there is no survival action or action for wrongful death regarding the death of a fetus, nor is there an action for negligence arising from the treatment or injury of a fetus. *Id.* at 479 (citing *Pietila v. Crites*, 851 S.W.2d 185, 186–87 (Tex.1993)); *see* Tex. Civ. Prac. & Rem.Code Ann. §§ 71.002, 71.021 (Vernon 1997). However, a mother "may recover mental anguish damages suffered as a result of her injury which was proximately caused by [the doctor's] negligent diagnosis, prenatal supervision and treatment of [the mother] and which includes the loss of her fetus." *Krishnan*, 916 S.W.2d at 482.

■ Two years later, the Court clarified *Krishnan* in *Edinburg Hospital Authority v. Trevino*, 941 S.W.2d 76 (Tex.1997). The mother of a stillborn baby proved her mental anguish as a "bystander" to the death of her baby. *Id.* at 78. The Court held that to recover as a bystander, there must be negligently inflicted injuries on the primary victim. *Id.* at 79. But because there is no action for negligence regarding a fetus, the mother could not recover under a bystander theory.[2] But

citing *Krishnan*, the Court noted that the plaintiff's evidence "relates to the grief [the mother] felt over the loss of the fetus as a separate individual and not as part of her own body. *Krishnan* and our decision today clarify that a woman can recover mental anguish damages resulting from negligent treatment that causes the loss of a fetus *as part of* the woman's body." *Id.* (emphasis in original). Thus, "in the interest of justice," the Court remanded the cause for a new trial under the correct legal theory. *Id.*

In 2000, we considered this issue in two cases. In *Sosebee v. Hillcrest Baptist Medical Center*, we affirmed the precedent that an unborn fetus is not a "person" for purposes of the wrongful death statute, survival action statute, various provisions of the Texas Constitution pertaining to equal rights, equal protection, and open courts, and the Fourteenth Amendment to the United States Constitution. *Sosebee v. Hillcrest Baptist Medical Center*, 8 S.W.3d 427, 432–33 (Tex.App.-Waco 2000, pet. denied). But we also affirmed that the mother has a claim if she can show negligent treatment of herself resulting in the loss of her fetus. *Id.* at 435 (citing *Krishnan* ).

In *St. Clair v. State*, the defendant was charged with intoxication assault; a woman suffered a miscarriage after an automobile collision. *St. Clair v. State*, 26 S.W.3d 89, 100 (Tex.App.-Waco 2000, no pet.). The defendant asserted that the mother did not suffer serious bodily injury. *Id.* We disagreed, concluding that "she suffered the protracted loss of a bodily member [the fetus] and ... her injury posed a substantial risk of [her] death." *Id.* at 101; *see also Rupp v. Brown*, 31 S.W.3d 803, 807 (Tex.App.-Austin 2000, pet. denied) (mother who alleged mental anguish

---

2. Elements of a bystander claim are listed. *Trevino*, 941 S.W.2d at 80. Bystander recovery is not permitted in medical malpractice cases. *Id.* at 81.

**218**

and loss of fetus due to negligent treatment of the mother has a cause of action).

 Based on these cases, especially *Trevino*, we hold that a fetus is a part of the mother's body, and if that body part is injured through negligent treatment, she has a claim for medical negligence for injury to her body.

### Evidence of Negligent Treatment of Pamela

Haskett complains that the evidence is legally and factually insufficient to support the jury's finding that his negligence proximately caused the occurrence. Therefore, he asserts, Randy's derivative complaint must also fail. Haskett's complaint about negligence essentially boils down to an argument that the evidence shows negligent treatment of the fetus, not Pamela, and therefore the jury's finding that Haskett was negligent regarding Pamela cannot stand. Based on our foregoing analysis of current Texas law, we reject that argument.

 When we conduct a review of whether evidence is legally sufficient, we consider only that evidence and the inferences therefrom which support the jury's finding, considered in the light most favorable to the finding, and disregard contrary evidence and inferences. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995). We can find the evidence legally insufficient if: (1) there is a complete absence of evidence for the finding, (2) there is evidence to support the finding, but rules of law or evidence bar the court from giving any weight to the evidence, (3) there is no more than a mere scintilla of evidence to support the finding, or (4) the

evidence conclusively establishes the opposite of the finding. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). To determine whether the evidence is factually sufficient, we must consider all the evidence in the record both for and against the jury's finding, and we can find the evidence factually insufficient only if we conclude that the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 633 (Tex.App.-Waco 2000, pet. denied).

 Pamela and Randy assert that various acts by Haskett on the day of delivery—acts pled in their latest amended petition—were performed in the course of treating *Pamela*. We agree. The jury question asked if Haskett's negligence "proximately caused the occurrence in question." While it could have been clearer, the question adequately referred to Haskett's treatment *of Pamela*.[3] Therefore, the pleadings assert and the jury charge inquired about negligent injury *to Pamela*, including the fetus as part of her body and not as a separate individual.

The evidence is sufficient, legally and factually, to support the finding that Haskett's negligent acts committed during his treatment *of Pamela* resulted in physical injuries to parts of Pamela's body. Pamela and Randy asserted, and offered evidence to prove, that Haskett was negligent when he:

- prematurely ruptured Pamela's membrane, thereby exposing the fetus to

---

**3.** Haskett did not object to the wording of the negligence question, except to request that an *instruction* be given that damages for mental anguish may not include grief over the loss of the fetus as a separate individual and not as

part of Pamela's body. The request was denied. It is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence. *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex.2000).

infection[4] and to umbilical cord compression;

- failed to properly prescribe the dosage of Pitocin administered to Pamela, which prevented an uncomplicated vaginal delivery;

- applied too much force on the baby when using the forceps-the use of which would not have been needed but for the negligence regarding the Pitocin-which injured the fetus; and

- untimely performed the C-section, which in addition should have been performed without first attempting the use of forceps. Furthermore, the surgery would not have been necessary had Haskett properly prescribed the Pitocin.

Thus, we overrule Haskett's sufficiency issues as to the finding of negligence. Accordingly, we also overrule his sufficiency issue regarding Randy's claim for loss of consortium.

Having found sufficient evidence of negligence, we now turn to the issue of whether there was sufficient evidence that Pamela suffered damages apart from her grief over the loss of her baby as a separate individual.

### Evidence of Pain and Mental Anguish

■ Haskett complains that the evidence is legally and factually insufficient to support the jury's damages award to Pamela for mental anguish, because the evidence pertains to her grief over the loss of the baby as a separate individual, not to the loss of the fetus as a part of her body. In their last amended petition, Pamela and Randy asserted, *inter alia:* "As a direct and proximate result of the negligence of Defendant Haskett, Plaintiff Pamela Butts suffered personal injuries, including the death of her fetus as part of Pamela

Butts's body. ... [She] suffered physical pain, mental pain, grief, sorrow and anguish and in all probability she will continue to suffer in this manner long into the future .... Pamela Butts seeks damages for the physical injury to her which includes the death of the fetus as part of Pamela Butts's body." In addition to these assertions, damages for the wrongful death of the baby (disallowed by the partial summary judgment) were separately pled in the petition. As we have noted, "a woman can recover mental anguish damages resulting from negligent treatment that causes the loss of a fetus *as part of* the woman's body." *Trevino,* 941 S.W.2d at 79. Furthermore, there is "no rational basis for excluding recovery of mental anguish damages in personal injury actions which have as one element the loss of a fetus." *Krishnan,* 916 S.W.2d at 482; *accord Sosebee,* 8 S.W.3d at 435.

■ The jury awarded Pamela $200,000 for past "physical pain and mental anguish," and $100,000 for future "physical pain and mental anguish." "Pain and mental anguish" were defined in the jury charge as "the conscious physical pain and emotional pain, torment, and suffering experienced by Pamela Butts because of the occurrence in question." "Mental anguish" damages "include[d] but [were] not limited to": (a) "her perception of and concern about her medical treatment, if any"; (b) "her shock to her nervous system and injuries to her emotional health because of the sensory perception of the death of her fetus, if any"; and (c) "her perception that something was wrong and her fear for the life of her fetus, if any." The jury was also instructed to "not include any amount for the loss of society, companionship or affection, if any, suffered

---

4. Somewhat inconsistently, the Buttses asserted that infection was not the cause of death.

**220**

as a result of the loss of the fetus."[5]

Pamela offered evidence that:

- because of the Pitocin dosage, she had stronger and more painful contractions;
- she suffered pain and anxiety during the course of a prolonged delivery which she knew, or at least suspected, was not going normally;
- she suffered needless pain and mental anguish due to the unnecessary C-section;
- insertion of the forceps was an unnecessary invasion into Pamela's body; and
- her post-operative conditions included being afraid, crying spells, wanting to die, nightmares, headaches, and alienation from Randy.

Evidence of the first three of these pertains to Pamela alone, not to the fetus. Evidence of the fourth arguably pertained to injuries both to Pamela alone and to the fetus. Evidence of the fifth was presented in such a way that the jury could relate it to loss of the fetus as a part of Pamela's body rather than as a separate "person." Furthermore, the jury was specifically told to not include any amount for the loss of society, companionship, or affection suffered as a result of the loss of the fetus. Applying the standards of review for legal and factual sufficiency set out earlier, we find that the evidence is sufficient, both legally and factually, to support the jury's award of damages to Pamela. We overrule these issues.

### Evidence of Medical Expenses

■ Haskett complains that the evidence is legally and factually insufficient to establish which of Pamela's medical expenses may have been associated only with the claims in the lawsuit; he says there are always some medical expenses associated with any childbirth at a hospital. However, Haskett did not object or request an instruction so that the jury would be required to segregate damages. Therefore, he waived the complaint. Tex.R. Civ. P. 274; see, e.g., Hruska v. First State Bank of Deanville, 747 S.W.2d 783 (Tex. 1988); Wilgus v. Bond, 730 S.W.2d 670 (Tex.1987); Columbia/HCA Healthcare Corp. v. Cottey, 72 S.W.3d 735, 747 (Tex. App.-Waco 2002, no pet. h.).

### Damages for Funeral and Burial Expenses

■ The jury awarded Pamela $823.74 in funeral and burial expenses. Haskett complains that there is no survival action when a fetus is stillborn, and therefore no damages can be awarded for funeral and burial expenses. In the alternative, he says there is no evidence to show that these expenses were a result of any negligent care of Pamela, and so Pamela cannot recover these damages as part of her negligence claim. The Texas Supreme Court has held that when a fetus dies in utero, funeral (and burial) expenses for the fetus are recoverable as "expenses incurred by the mother as a direct result of her injury." Witty v. American Gen. Capital Dist., Inc., 727 S.W.2d 503, 506 (Tex.1987).

We overrule this issue.

### The Photograph

■ Over Haskett's objection, the trial court admitted a photograph of Pamela holding the stillborn baby. In addressing this issue in which Haskett asserts that the trial court erred and that a reversal is required, we will assume that admitting the photograph was error without so finding and address whether the error was harmless. We will not reverse a judgment unless the error "probably caused the ren-

---

**5.** Haskett did not object to the damages question.

dition of an improper judgment." TEX. R.APP. P. 44.1(a).

In a seven-day trial there were forty exhibits admitted, and seven doctors testified about negligence. Haskett vigorously defended himself against the claims and asserted throughout the proceedings that Texas law does not allow a recovery on the basis upon which the case was presented to the jury. We have demonstrated that his assertion is incorrect. Pamela and Randy testified, as did Pamela's mother, about damages. The jury rejected Pamela's request for $600,000 to $800,000 for pain and mental anguish, instead awarding $300,000.

■ We conclude that this single photograph did not cause the jury to find that Haskett was negligent or to find an excessive amount of damages. *Id.* We overrule this issue.

### Cumulative Harm

■ Haskett's final complaint is that the cumulative effect of (1) the erroneous admission of the photograph, (2) improper jury argument emphasizing the fetus as a "person," and (3) the award of damages for injuries to the fetus and not to Pamela, caused sufficient harm to require a new trial. Sometimes called "cumulative error," this issue actually refers to "cumulative harm," *i.e.*, the combined harm from numerous errors. Multiple errors, determined harmless when considered separately, may combine to produce an effect that is harmful, requiring reversal. *Weidner v. Sanchez*, 14 S.W.3d 353, 377 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

We note that the Texas Supreme Court has not often discussed "cumulative harm," and has recognized it only in the contexts of improper jury argument and juror misconduct. *Scoggins v. Curtiss & Taylor*, 148 Tex. 15, 219 S.W.2d 451, 454 (1949); *Smerke v. Office Equipment Co.*, 138 Tex.

236, 158 S.W.2d 302, 304 (1941). Some courts of appeals have conducted a "cumulative harm" analysis, but almost invariably overrule the issue, frequently giving it scant attention. *E.g., Crescendo Investments, Inc. v. Brice*, 61 S.W.3d 465, 481 (Tex.App.-San Antonio 2001, no pet.); *Walton v. Canon, Short & Gaston*, 23 S.W.3d 143, 154–55 (Tex.App.-El Paso 2000, no pet.); *Weidner*, 14 S.W.3d at 377–78; *Brown v. Hopkins*, 921 S.W.2d 306, 318–20 (Tex.App.-Corpus Christi 1996, no writ); *Campbell v. C.D. Payne & Geldermann Sec.*, 894 S.W.2d 411, 425 (Tex.App.-Amarillo 1995, writ denied); *Texas Health Enterprises, Inc. v. Krell*, 828 S.W.2d 192, 209–210 (Tex.App.-Corpus Christi), *vacated by agr.*, 830 S.W.2d 922 (Tex.1992); *Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 695–96 (Tex.App.-Texarkana 1991, writ granted, order withdrawn); *Klein v. Sporting Goods, Inc.*, 772 S.W.2d 173, 179 (Tex.App.-Houston [14th Dist.] 1989, writ denied).

We have already concluded that the evidence proved an injury to Pamela. Furthermore, there was no objection to the jury argument, which is required to preserve a complaint for appeal. TEX.R.APP. P. 33.1(a); *Brown*, 921 S.W.2d at 318. The remaining alleged error refers to the photograph. But "cumulative harm" by definition requires more than one error. Therefore, Haskett cannot show cumulative harm, and we overrule the issue.

### Cross-Issues

The Buttses request that we reassess Texas Supreme Court precedent, and hold that to deny parents a wrongful death claim when a baby is stillborn violates the Federal and Texas Constitutions, as well as the Texas Code Construction Act. However, the cross-issues are conditionally raised, and the Buttses ask us to disregard

them if we affirm the judgment. There-
fore, we will not decide them.

**Conclusion**

Having overruled all of Haskett's issues,
we affirm the judgment.