

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-17-00424-CV

———————————————

JERMAINE WATTS, Appellant

V.

LISA ADVIENTO, Appellee

---

On Appeal from the 325th District Court
Tarrant County, Texas
Trial Court No. 325-627998-17

---

Per Curiam Memorandum Opinion

## MEMORANDUM OPINION

In what we construe as six issues, pro se appellant Jermaine Watts appeals the family-violence protective order the trial court rendered against him.[1]  *See* Tex. Fam. Code Ann. §§ 81.001, 85.001, .022.  We affirm.

## I. BACKGROUND

On October 19, 2017, appellee Lisa Adviento filed an application for a family-violence protective order against Watts to protect herself and three children, L.C., L.W.-A., V.W-A., as well as two other members of her family or household.  *See id.* § 82.001, .002(a).  Adviento alleged that she and Watts had been in a dating relationship and that Watts had engaged in family violence.  She asked the trial court to issue a temporary ex parte protective order pending a final hearing and to issue a final protective order after the final hearing.  *See id.* §§ 83.001, 84.001, 85.001.

In affidavits attached to her application, Adviento averred that Watts had been abusive toward her and had made threats of violence toward her and her family.  She asserted that Watts had physically and sexually assaulted her at his residence on

---

[1]Watts's pro se brief is handwritten, and it is somewhat difficult to discern the issues he has attempted to raise.  We have construed Watts's brief liberally, but he, though pro se, is nevertheless held to the same standards as a party who is represented by counsel.  *See In re P.S.*, 505 S.W.3d 106, 111 (Tex. App.—Fort Worth 2016, no pet.).  The Texas Rules of Appellate Procedure require that a brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."  Tex. R. App. P. 38.1(i).  Accordingly, to the extent Watts has attempted to raise issues in his brief other than those addressed in this opinion, we hold those issues have been waived as inadequately briefed, and we overrule them.  *See P.S.*, 505 S.W.3d at 111.

2

August 14, 2017, and that he had threatened her and her family's safety if she reported the incident to the police. She said that after the August 14 incident, Watts made additional threats of physical harm toward her. She alleged that Watts had two other children with another woman, that he had been known to hit those children, and that he had an extensive criminal history that included violent offenses against other family members. She further averred that she was concerned Watts would follow through on his threats toward her.

The trial court granted Adviento's request for an ex parte protective order and subsequently held a final hearing. Following the hearing, the trial court found that family violence had occurred and was likely to occur in the future and that Watts had committed family violence. *See id.* § 85.001(a)–(b). The trial court granted Adviento's application and rendered a final protective order against Watts. *See id.*

## II. JURISDICTION

Before reaching Watts's issues, we address Adviento's argument that we lack jurisdiction over this appeal. She contends that the trial court's protective order did not dispose of all issues and, thus, is not final and appealable.

To support her claim that the protective order did not dispose of all issues, Adviento relies on several facts. First, she notes that she filed her application for protective order "during the pendency" of a suit affecting the parent-child relationship (SAPCR). According to Adviento, the child who is the subject of that SAPCR is a protected person under the protective order at issue in this appeal, and

Adviento additionally claims that she and Watts are the child's parents. Further, Adviento claims the trial court conducted its final hearing on her application for protective order "in conjunction with" its temporary-orders hearing in the SAPCR and that at the end of the hearing, the trial court issued temporary orders in the SAPCR in addition to granting Adviento's application for the protective order.

Adviento argues that the trial court's future final judgment in the SAPCR, which remains pending, may alter the effect of the protective order and that, consequently, the protective order does not dispose of all issues. As we explain below, because the protective order was not rendered in a SAPCR or a suit for dissolution of marriage, we conclude that we have jurisdiction over this appeal.

Family code section 81.009 governs an appeal from a protective order rendered under sections 81.001 and 85.001. *See id.* § 81.009. Section 81.009 provides that a protective order is immediately appealable unless it was rendered against (1) a party in a suit for dissolution of marriage or (2) a party in a suit affecting the parent-child relationship. *Id.*; *In re Keck*, 329 S.W.3d 658, 661 (Tex. App.—Houston [14th Dist.] 2010, no pet.). If either of those exceptions applies, then appeal of the protective order must await issuance of a final, appealable order in the underlying case. *See id.* § 81.009; *Keck*, 329 S.W.3d at 661. Otherwise, a party may appeal from the protective order. *See* Tex. Fam. Code Ann. § 81.009; *Keck*, 329 S.W.3d at 661.

4

Adviento's argument implicates the second exception.[2]  That exception applies when the trial court's protective order is rendered "in" a SAPCR.  *See* Tex. Fam. Code Ann. § 81.009(c); *Keck*, 329 S.W.3d at 661.  But that is not what happened here.  Adviento's statements that she filed her application for protective order "during the pendency" of a SAPCR and that the trial court held a temporary orders hearing on the SAPCR "in conjunction with" the final hearing on her application for protective order suggest that the SAPCR and application for protective order are not one cause but separate causes.  To verify whether that was so, we contacted the Tarrant County District Clerk, who confirmed that the SAPCR Adviento appears to reference is docketed as cause number 325-626771-17, while the protective order is docketed as cause number 325-627998-17.  Further, the record shows that the protective order at issue in this appeal was rendered in cause number 325-627998-17, not cause number 325-626771-17.  Thus, it was not rendered in the SAPCR.  *See Keck*, 329 S.W.3d at 661 (holding that protective order was not rendered "in" a pending SAPCR in part because the SAPCR had a different cause number from the protective order).

---

[2]Adviento does not assert that she and Watts are parties to a suit for dissolution of marriage, and in any event, the record shows she and Watts had a dating relationship and were not married.  Accordingly, the section 81.009(b) exception— providing that an appeal from a protective order rendered against a party in a suit for dissolution of marriage must wait until the trial court renders a final divorce decree— is inapplicable here.  *See* Tex. Fam. Code Ann. § 81.009(b).

5

Since neither of the section 81.009 exceptions applies to the protective order in this case, we have jurisdiction over this appeal. *See* Tex. Fam. Code Ann. § 81.009(a); *Keck*, 329 S.W.3d at 661.

## III. SUFFICIENCY OF THE EVIDENCE

In what we construe as his second issue, Watts contends the trial court's protective order is not supported by legally and factually sufficient evidence. Watts specifically argues that the evidence is legally and factually insufficient to show either that he committed an act of family violence or that he was likely to commit family violence again in the future. *See* Tex. Fam. Code Ann. §§ 81.001, 85.001, .022. We conclude the evidence is legally and factually sufficient to support the trial court's findings.

### A. STANDARD OF REVIEW[3]

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*,

---

[3]We have noted that "[t]here is disagreement among our sister intermediate appellate courts as to the proper standard of review to be applied in appeals from protective orders." *McAfee v. Yancey*, No. 02-14-00192-CV, 2015 WL 1020856, at *3 n.9 (Tex. App.—Fort Worth Mar. 5, 2015, no pet.) (mem. op.). We observed that some courts review such orders for an abuse of discretion, while others, including this one, apply legal and factual sufficiency standards of review. *See id.*

444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

### B. APPLICABLE LAW

The family code provides that a trial court must render a protective order if it finds that family violence has occurred and is likely to occur in the future. Tex. Fam. Code Ann. §§ 81.001, 85.001, .022. Among other things, "family violence" refers to "dating violence." *See id.* § 71.004. As relevant here, dating violence means an act, other than a defensive measure to protect oneself, by an actor that is (1) committed against a victim or applicant for a protective order with whom the actor has or has

7

had a dating relationship and (2) intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the victim or applicant in fear of imminent physical harm, bodily injury, assault, or sexual assault. *See id.* § 71.0021(a).

## C. RELEVANT EVIDENCE

### 1. Adviento

Adviento testified that after she had dated Watts for about a year, he turned controlling. She stated that Watts would scream at and belittle her and that he had threatened her on multiple occasions. She testified about a telephone conversation she had with Watts that her father also heard because she had turned on the speakerphone function. According to Adviento, Watts said that he was not scared to hurt her, that he was going to kill her, and that he was not afraid to kill her family. Adviento said that as a result of this conversation, her family took steps to protect her from Watts, including putting her in counseling and installing security cameras around the house where she lived with her parents.

Adviento additionally stated that Watts had also told her that if he was put in jail, he would send someone else to physically harm her. She further testified that Watts had pushed, slapped, punched, and kicked her during the relationship.

Adviento stated that Watts's efforts to control her extended to her workplace. According to Adviento, Watts would come there to check on her. She stated that he had recently started an incident at her workplace that resulted in her employer asking

8

him to leave, and she also said that her employer had barred Watts from coming to its facility. As a result of Watts's continued visits, Adviento stated, she was suspended, written-up, and moved from full-time to part-time employment.

According to Adviento, Watts physically assaulted her in March 2017. She stated that she attempted to make a police report and to apply for a protective order after that incident but that she did not go through with the protective order because Watts threatened her and her family. Adviento also testified that she declined to pursue the police report because Watts had threatened her and her family "on multiple, multiple occasions." She indicated that she wanted to press charges against Watts and that the only reason she did not was because he had threatened her.

Adviento testified that Watts sexually assaulted her on August 14, 2017. She said that on that day, she went to a see a movie with Watts and expected him to drive her back to her home after the movie. But instead of taking her home, Watts took her back to his apartment, telling her that he had some baby supplies for her. Adviento stated that Watts's brother, Jerry Valentine, was also at the apartment but that around 8:00 p.m., she and Watts were alone together in Watts's room, and Valentine was in a different room of the apartment. She said that Watts began making sexual advances on her but that she told him "no" and tried to fight him off. Adviento stated that Watts hit her when she tried to fight him off. She further testified that the next day, she went to the hospital and underwent a sexual assault nurse examination, which found that she had vaginal and rectal tearing and bleeding.

9

Adviento testified that she feared that Watts would commit a future act of family violence if the trial court did not issue a protective order against him.

In an attempt to show that he did not sexually assault Adviento on August 14, Watts asked her on cross-examination whether she had stayed the night at his apartment after the assault occurred, and Adviento replied that she had. Watts also asked her whether she had reported the sexual assault to the police, and Adviento stated that she had not. But Adviento added that the reason she had stayed at Watts's apartment after the sexual assault was because Watts was holding her against her will, and thus she had no choice. And she also stated that she did not report the incident to the police because she was scared of Watts. When Watts asked Adviento why she did not call her family for help, she replied that it was because he had threatened to kill her and her family.

### 2. Manuel Adviento

Adviento's father, Manuel, testified about the telephone conversation between his daughter and Watts that she had allowed him to listen to. Manuel stated that during the conversation, Watts "said something about killing the whole family if [Adviento] didn't go back with him." Manuel testified that after he heard this conversation, he installed security cameras all over his house because he was afraid of what Watts might do. Manuel also testified that the security cameras had captured Watts on two occasions. On one occasion, Watts dropped something off and then

10

walked around, tapping on and looking in a window. On a second occasion, Watts took pictures of the house.

Manuel also testified about a verbal disagreement between his daughter and Watts that occurred in his daughter's bedroom. Manuel testified that he went to investigate and discovered that Watts had twisted Adviento's hand and was pushing her. Manuel stated that when he asked what was going on, Watts just got up and walked out.

### 3. Douglas Greer

Douglas Greer testified that Adviento was a friend who had worked with his wife for a long time. He stated that on a couple of occasions, he had seen Watts at Adveinto's workplace yelling and cussing at her. Greer stated that Watts had spoken to him about Adviento but never used her name. Instead, Watts called her by terms such as "bitch." Greer said that based upon his experience with Watts at Adviento's workplace, Watts had a temper. He also testified that Adviento had shown him bruises on her arm, although he could not remember exactly when that had happened. Greer stated that Adviento had been "absolutely terrified" ever since Watts had assaulted her.[4]

---

[4]The record is unclear whether Greer was referencing the August 2017 sexual assault, the March 2017 physical assault, or another incident altogether.

### 4. Tabatha Githengu

Tabatha Githengu testified that she used to work with Adviento and witnessed Watts verbally abuse her. Like Greer, Githengu testified that Watts called Adviento "a B word, which is a bitch." She further testified that although she had never witnessed Watts hit Adviento, she had seen him push her. She said that Watts was a controlling person and attempted to control Adviento. She also testified that she was concerned for Adviento's safety.

### 5. Jerry Valentine

Watts called his brother, Jerry Valentine, as a witness, and he testified that he was with Watts throughout the evening on August 14 and that he did not witness any physical or verbal altercation between Watts and Adviento that night. Valentine testified that he stayed the night at Watts's apartment but that he was not with Watts "when [he and Adviento] had their personal time."

### 6. Watts

Watts also called himself as a witness and testified in conclusory fashion that "no altercation" occurred between him and Adviento on August 14 and that there had been "no altercation at all, ever of family violence" between him and Adviento. On cross-examination, Watts testified that he was never alone with Adviento at his apartment on the night of August 14. He stated that he understood sexual assault to mean "having sex with somebody against their will," and he agreed that holding

someone against their will to force them to have sex constituted sexual assault. Watts denied sexually assaulting Adviento.

In addition to his own testimony and that of his brother, Watts offered, and the trial court admitted, four photographs. Before admitting the photographs, the trial court asked Watts whether he wanted to testify about them, to which Watts responded that he did not. Instead, he represented to the trial court that the photos were authentic and had not been altered. When the trial court asked Watts what the pictures were, he replied that the photos "verif[ied] that [he] indeed was where [he] said [he] was at the said time" and that they "validate[d] that [Adviento] at no point in time was in any imminent danger." No one testified as to the contents of these photographs.[5] But Watts represents in his brief that one of the photos shows Adviento hugging him with their child, while another shows her playing safely at Watts's home.

### D. ANALYSIS

As we construe his brief, Watts argues the trial court's family-violence findings are not supported by legally and factually sufficient evidence because the evidence he presented "show[s] clearly that [Adviento] did not sustain any physical harm or serious bodily injury and was not in any [imminent] fear of her life" on August 14 and

---

[5]We also note that the trial court admitted the photographs over Adviento's objections that a sufficient predicate for admissibility had not been laid and that their relevance had not been established.

13

"support[s] a reasonable inference that [Adviento] was never assaulted or in any [imminent] fear" of him on August 14. But this argument is grounded on a misapplication of the law. Our task is not to determine whether some evidence in the record supports a finding contrary to the one the trial court made, as Watts's argument would require us to do. Rather, we are to apply the legal and factual sufficiency standards of review articulated above to determine whether the evidence is sufficient to support the findings the trial court actually made. And viewing the evidence through those standards of review, we conclude legally and factually sufficient evidence supports the trial court's findings that Watts committed family violence in the past and is likely to commit it again in the future.

In reviewing the evidence, we are mindful that the role of determining the witnesses' credibility and the weight to be given to their testimony belongs exclusively to the factfinder, not to this court. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Ferrant v. Graham Assocs., Inc.*, No. 02-12-00190-CV, 2014 WL 1875825, at *4 (Tex. App.—Fort Worth May 8, 2014, no pet.) (mem. op. on reh'g). Here, the trial court could have found Adviento's, Manuel's, Greer's, and Githengu's testimony credible and concluded from their testimony that Watts physically assaulted Adviento in March 2017, that Watts sexually assaulted her in August 2017 (an assault that also resulted in Adviento suffering bodily injury and physical harm), and that on multiple occasions, Watts made threats that reasonably placed Adviento in fear of imminent physical harm and bodily injury. Additionally, there is no dispute that Watts

and Adviento had a dating relationship. Watts concedes as much in his brief, and both he and Adviento testified to that fact at the hearing. And finally, Adviento is the person who sought the protective order at issue here. We conclude the evidence is legally and factually sufficient to support a finding that Watts committed an act of dating violence, and, thus, family violence, in the past.

As for the trial court's finding that Watts was likely to commit family violence in the future, evidence of past family violence can constitute sufficient evidence that future family violence is likely. *See Coffman v. Melton*, 448 S.W.3d 68, 75 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also In re Epperson*, 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007, no pet.) ("Oftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order."). Given Adviento's, Manuel's, Greer's, and Githengu's testimony, the trial court could have found that Watts engaged in a pattern of dating violence toward Adviento and would continue to act the same way in the future. Further, Adviento testified that she feared Watts would commit future family violence if the trial court did not issue a protective order. And Githengu testified that she was concerned for Adviento's safety. We conclude the evidence is legally and factually sufficient to support a finding that Watts is likely to commit family violence in the future.

Because the evidence is legally and factually sufficient to support both the trial court's finding that Watts committed an act of family violence against Adviento and

15

its finding that he is likely to do so again in the future, we hold the trial court's protective order is supported by legally and factually sufficient evidence. *See* Tex. Fam. Code Ann. §§ 81.001, 85.001, .022. Accordingly, we overrule Watts's second issue.

## IV. ADMISSIBILITY OF THE EVIDENCE

In his first issue, Watts raises numerous complaints related to the trial court's admission of evidence. He argues the trial court erred by admitting character evidence in violation of Rules 404 and 405 of the rules of evidence. He argues the trial court erred by admitting evidence that was prejudicial and that misled and confused the trial court, a complaint that appears grounded on Rule 403. He argues the trial court admitted biased testimony against him in violation of Rule 613. He appears to argue that the trial court allowed witnesses to testify to matters outside of their personal knowledge in violation of Rule 602. In addition, we construe Watts's brief as arguing the trial court erred by admitting irrelevant evidence in violation of Rule 402.

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if not apparent from the context. Tex. R. App. P. 33.1(a)(1)(A); *see* Tex. R. Evid. 103(a)(1). Watts does not point us to any particular portions of testimony that he claims the trial court erroneously admitted. Rather, he appears to make a global complaint that the testimony of all the adverse witnesses who testified

16

at the hearing was inadmissible. As noted above, Adviento, Manuel, Greer, and Githengu testified at the hearing. Our review of the record shows that Watts raised few objections to these witnesses' testimony while they were on the stand. And even broadly construed, we cannot say that any of those objections were grounded on any of the evidentiary rules that form the basis of his first issue. Because he failed to object to any of Adviento's, Manuel's, Greer's, and Githengu's testimony on any of the grounds he raises in his brief, Watts failed to preserve his evidentiary complaints with respect to their testimony.[6]

Watts's brief also challenges the testimony of another witness, Phillip Waldon. After Adviento called Waldon to the stand, but before he began testifying, Watts objected to the admission of any testimony from Waldon because any testimony from him would be prejudicial. But this objection was premature and was not specific and, thus, did not preserve error. *See Holmes v. Concord Homes, Ltd.*, 115 S.W.3d 310, 316 (Tex. App.—Texarkana 2003, no pet.) ("[P]remature objections preserve nothing for review."); *Correa v. Gen. Motors Corp.*, 948 S.W.2d 515, 518 (Tex. App.—Corpus Christi-Edinburg 1997, no writ) ("[A] preliminary objection to an entire block of

---

[6]We note that after all the evidence had been presented, Watts moved to "strike the witness[es'] testimonies" as not relevant, a request the trial court denied. Even if this broad, unspecific objection could somehow be considered an objection to the admission of irrelevant testimony under Rule 403, it would preserve nothing, as the objection was not timely. *See Petroleum Workers Union of the Republic of Mex. v. Gomez*, 503 S.W.3d 9, 36 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("To be considered on appeal, an objection to the admission of evidence must be made when the evidence is offered, not well after it was introduced.").

17

anticipated testimony is no substitute for specific objections to allegedly inappropriate matters as they are elicited."). Additionally, while he was cross-examining Waldon, Watts at one point objected, stating: "I would like for the witness'[s] testimony to be impeached and just struck." But this objection was insufficiently specific to preserve error. *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1); *Campbell v. State*, 85 S.W.3d 176, 185 (Tex. 2002) (noting that a specific objection is one that enables the trial court to understand the precise grounds so as to make an informed ruling and that affords the offering party an opportunity to remedy any defect, if possible).

Our review of the record reveals one additional objection Watts made to Waldon's testimony that could be construed as applicable to the evidentiary complaints he has raised on appeal.[7] Waldon testified that he was the permanent managing conservator of two of Watts's children. He stated that he was currently in a legal dispute with Watts regarding those children. Waldon testified that he had recently been ordered to give the children to Watts for an overnight visit. When Adviento asked Waldon why he initially refused comply with that order, Watts told the trial court that he was "objecting to the relevancy of his testimony." The trial court overruled the objection, and then Waldon answered the question, stating,

---

[7]Watts made additional objections to various portions of Waldon's testimony on the grounds that they were duplicative of other evidence, that they were nonresponsive, and that they were hearsay. Watts has not complained on those grounds on appeal.

18

They were really traumatized from the first two visits, and we had to exchange, like, at the Collin County Sheriff's Office. And they were absolutely screaming and crying and were upset they were going to have to go even though they had spent daytime visits with him in the past. And when we got there he did tell them that if you do not want to visit you don't have to. The young one went ahead and got in the car. The older one said, I can't let her go by herself. And then we had some discussion where he was pretty upset at me because --

Watts cut in at the end of Waldon's answer by objecting that it was a narrative, an objection the trial court sustained.

Even assuming the trial court erred by admitting Waldon's answer, we could not reverse the trial court's judgment because of that error unless it probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1); *Loera v. Fuentes*, 511 S.W.3d 761, 776 (Tex. App.—El Paso 2016, no pet.). In making that determination, we review the entire record, considering the evidence, the case's strengths and weaknesses, and the verdict. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 236 (Tex. 2011). Erroneously admitted evidence is generally harmless when the rest of the evidence was so one-sided that the error likely made no difference. *See JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 165 (Tex. 2015). Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. *See Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001).

As we have explained, the trial court was required to issue a protective order against Watts if it found that he had committed family violence in the past and likely

19

would in the future. *See* Tex. Fam. Code Ann. §§ 83.001, 84.001, 85.001. The trial court did so, and we cannot say its findings turned on Waldon's answer to the question asking why he initially refused to comply with a court order that he allow Watts an overnight visitation with two of his children. *See Interstate Northborough P'ship*, 66 S.W.3d at 220. Further, as outlined above, the record shows that the overwhelming evidence relevant to the trial court's protective order findings came from the testimony of Adviento, Manuel, Greer, Githengu, Watts, and Valentine. And their testimony so weighed in favor of the trial court's findings that Waldon's answer likely made no difference. *See JLG Trucking*, 466 S.W.3d at 165. Thus, assuming the trial court erred by admitting Waldon's answer to the objected-to question, we conclude that error was harmless.

In sum, we conclude the following. Watts failed to preserve the evidentiary complaints he has raised in his first issue, except for his objection to Adviento's question to Waldon asking why he failed to comply with a court order to deliver two of Watts's children to him for an overnight visit. And assuming the trial court erred by admitting Watts's answer to that question, the error was harmless. Accordingly, we overrule Watts's first issue.

## V. OPPOSING CONSEL'S ALLEGED MISCONDUCT

In his third issue, Watts complains of alleged misconduct on the part of Adviento's counsel and of the trial court allegedly allowing that behavior. He points to the following exchange while he was cross-examining Adviento at the hearing:

20

Q. (BY MR. WATTS) Did I not cheat on you by having sexual intercourse with J[.] G[.]?

A. I don't know what you did.

Q. Yes or no. That's a -- that's a yes or no question.

A. I don't know honestly. I don't know what he did.

Q. Are you --

MR. WATTS: There you go with the head nodding again. Are you asking her to respond to each other?

THE COURT: All right. Quit commenting on -- on that and ask your questions.

MR. WATTS: I asked my question. I just need a direct answer, but she continues to the tell the witness --

THE WITNESS: Your Honor, I don't know --

MR. WATTS: -- not -- I need to address it. And she's been shaking her head. She's leading the witness to answer to the way that it's favorable for her, so that's a prejudice.

THE COURT: All right. I'm not finding that that's happening, but ask your question and let's move forward.

MR. WATTS: No further questions, Your Honor.

And during an earlier portion of his cross-examination of Adviento, the following exchange had occurred:

Q. Have you altered said birth certificate since the filing of the paternity case of the -- the decision -- orders that I filed have you altered said documentation?

A. I'm not understanding. Like, I'm not understanding.

21

Q. I'm just saying, like, y'all give each other head signals, and is that something that you are telling her not to answer, so you -- okay.

Watts argues these exchanges demonstrate that Adviento's counsel signaled to her how to answer his cross-examination questions "through means of the universally know[n] sign [l]anguage and[/]or [b]ody [l]anguage by nodding her head yes and no when favorable to her client." Watts also contends that Adviento's counsel told Greer how to answer the questions she would ask him at the hearing. And Watts maintains that all of this alleged misconduct deprived him of his rights "under the Texas Bills of Rights Sec. 10, Sec. 19 and U.S. Constitution Clause of Due Process amendments 14 and 13[,] causing an [i]rregularity of [c]ourt [p]roceedings and [e]xtreme [j]udicial and [p]rofessional [m]isconduct." He also argues that the alleged misconduct violated Rule 611 of the rules of evidence and the disciplinary rules of professional conduct. He further contends that the trial court's alleged failure to address this misconduct breached the code of judicial conduct.

As was the case with the bulk of his evidentiary complaints, our review of the record shows that Watts did not raise these complaints in the trial court by making timely, specific objections, requests, or motions. *See* Tex. R. App. P. 33.1(a). And Watts acknowledges in his brief that he failed to raise these complaints by timely objection. Because Watts failed to properly raise in the trial court his complaints related to the alleged misconduct of Adviento's counsel and the trial court, he failed to preserve them. *See* Tex. R. App. P. 33.1; *cf. Bashir v. Khader*, No. 01-12-00260-CV,

22

2012 WL 4742769, at \*2 (Tex. App.—Houston [1st Dist.] Oct. 4, 2012, no pet.) (mem. op.) (holding that because appellant failed to present in the trial court his complaint about the alleged gross misconduct of his trial attorney in failing to appear at the hearing on his motion for new trial, the complaint was not preserved).[8] We therefore overrule his third issue.

## VI. INVOLUNTARY SERVITUDE

In its protective order, the trial court ordered Watts to "complete a battering intervention and prevention program accredited under article 42.141 of the Texas Code of Criminal Procedure." In what we construe as his fourth issue, Watts contends this requirement constitutes involuntary servitude and forced labor and, thus, violates the Thirteenth and Fourteenth Amendments to the United States Constitution, as well as article one, sections ten and fourteen of the Texas constitution. Other than quoting various parts of these constitutional provisions and a definition from the Texas Penal Code, Watts's only explanation as to how the trial court's order violated the referenced constitutional provisions is the conclusory argument that he "was being accused of . . . [a] criminal offense and should have been protected under [t]he Texas and United States Constitutions under their due process

---

[8]Even if he had preserved his complaints, we note that the record does not substantiate Watts's contention and that the trial court stated that it did not find that Adviento's counsel was using head signals to tell Adviento how to answer Watts's questions.

23

clauses but was not afforded said protections and liberties during said [h]earing and [t]rial."

We have already noted that although Watts is acting pro se, he is nevertheless held to the same standards as a party who is represented by counsel. *See P.S.*, 505 S.W.3d at 111. As such, he was required to provide a brief that "contain[s] a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i); *see P.S.*, 505 S.W.3d at 111. Watts's argument does not satisfy this standard. *See Page v. State Farm Lloyds*, No. 10-12-00317-CV, 2013 WL 6409768, at *5–6 (Tex. App.—Waco Dec. 5, 2013, pet. denied) (mem. op.) (holding several of appellant's issues were inadequately briefed because she "merely uttered a brief conclusory statement without legal support" for the issues); *Milteer v. W. Rim Corp.*, 303 S.W.3d 334, 336 (Tex. App.—El Paso 2009, no pet.) (holding appellant's issue was inadequately briefed where it contained legal authority for the standard of review and applicable law but provided no discussion or argument of the cited legal authority or explanation of how it supported his specific contentions). We overrule Watts's fourth issue as inadequately briefed.

## VII.  THE RIGHT TO INDICTMENT

In what we construe as his fifth issue, Watts argues that the trial court violated article I, section 10 of the Texas constitution. He specifically quotes the requirement that "no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or

24

imprisonment, otherwise than in the penitentiary." *See* Tex. Const. art. I, § 10.  But other than this quote, Watts's discussion of his fifth issue consists solely of the conclusory argument that he "was being accused of . . . [a] criminal offense and should have been protected under [t]he Texas and United States Constitutions under their due process clauses but was not afforded said protections and liberties during said [h]earing and [t]rial."  For the reasons we stated regarding his involuntary-servitude issue, we conclude Watts inadequately briefed his issue regarding article I, section 10's right to indictment.  *See Page*, 2013 WL 6409768, at *5–6; *Milteer*, 303 S.W.3d at 336.  Thus, we overrule Watts's fifth issue.

## VIII.  NO CUMULATIVE HARM

In what we construe as his sixth issue, Watts contends the cumulative effect of all the errors he has raised on appeal resulted in harm.

Multiple errors, even if considered harmless when taken separately, may result in reversal if the cumulative effect of the errors is harmful.  *Haskett v. Butts*, 83 S.W.3d 213, 221 (Tex. App.—Waco 2002, pet. denied); *Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 570 (Tex. App.—Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex. 1998).  We addressed Watts's sufficiency complaints and concluded that legally and factually sufficient evidence supports the trial court's order.  Thus, we found no error with respect to Watts's second issue.  We also concluded that Watts failed to preserve his third issue and thus found no error with respect to that issue.  And we concluded that Watts failed to adequately brief his fourth and fifth issues and thus

25

found no error with respect to them. That leaves the numerous evidentiary complaints Watts raised in his first issue.

With regard to Watt's first issue, we concluded he failed to preserve all of his evidentiary complaints except for one relevance objection to Waldon's testimony. Thus, with respect to the unpreserved evidentiary complaints, we found no error in the trial court's admission of the complained-of evidence. And with respect to the preserved evidentiary complaint, we simply assumed the trial court erred by admitting that portion of Waldon's testimony and concluded that assumed error was not harmless. In analyzing Watts's sixth issue, we again assume the trial court erred by admitting the objected-to portion of Waldon's testimony. But even so, that would be only one error, and by definition, cumulative harm requires more than one error. *See Haskett*, 83 S.W.3d at 221. Thus, Watts cannot show cumulative harm. We therefore overrule his sixth issue. *See id.*

## IX. CONCLUSION

Having overruled all of Watts's issues, we affirm the trial court's protective order. *See* Tex. R. App. P. 43.2(a).

Per Curiam

Delivered: March 28, 2019

26